UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES HILLERBRANDT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case number 4:05cv0735 CAS |
| ) | TCM |
| JIM MOORE and JEREMIAH W. ) | |
| ("JAY") NIXON, Attorney General ) | |
| for the State of Missouri,[1] ) | |
| ) | |
| Respondents. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of James Hillerbrandt ("Petitioner"), a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition. See 28 U.S.C. § 636(b).

## Background

Petitioner was charged in 2001 with one count of second degree murder for the fatal shooting of Thomas Digennaro and one count of armed criminal action. (Resp. Ex. A-1 at 149.) An additional charge of being a prior and persistent offender followed in April 2002 on the day Petitioner's jury trial began. (Id. at 102-03.) That same day, Petitioner's trial counsel filed a motion to hold the State to proving the charges in the indictment. (Id. at 71-72.) Specifically, trial counsel requested that the State be required to prove that

---

[1]Because Petitioner is challenging a sentence to be served in the future, the Attorney General of Missouri, Jeremiah W. ("Jay") Nixon, is added as a proper party respondent. See Rule 2(b), Rules Governing Section 2254.

Petitioner knowingly caused the death of Digennaro by shooting him as opposed to proving that Petitioner attempted to kill or cause serious physical injury to Anthony Miscuraca and thereby caused Digennaro's death.  (Id. at 72.)

Following a two-day trial at which Petitioner presented no evidence, the jury found Petitioner guilty of first degree involuntary manslaughter and armed criminal action; the trial court found Petitioner to be a prior and persistent offender.  (Resp. Ex. B-2; Resp. Ex. A-1 at 44, 47, 66.)  At his sentencing hearing on May 31 Petitioner's trial counsel asked for leniency, explaining that Petitioner and he believed the jury's verdict to be just and that Petitioner's criminal history was attributable to his alcohol and drug problems.  (Resp. Ex. B-3 at 2.)  The trial court sentenced Petitioner as a prior and persistent offender to ten years imprisonment on the involuntary manslaughter conviction and five years imprisonment on the armed criminal action conviction, to be served consecutively to the ten year term.  (Id. at 5.)  A Judgment and Sentence form signed by the trial court the same day reflected this sentence.  (Resp. Ex. A-1 at 25.)  A separate, typewritten Judgment and Sentence order was signed on behalf of the trial court and read that the two sentences were to be served concurrently.  (Id. at 23-24.)

Petitioner appealed on June 10.  (Id. at 11.)  His appeal was dismissed on January 13, 2003.  See State v. Hillerbrandt, No. 01CR-4121 (Mo.Cir.Ct. Jan. 13, 2003) (https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited July 15, 2008)).  On March 7, the trial court amended the previously-entered typewritten Judgment and

Sentence to read that the sentences were to be served consecutively. (Resp. Ex. A-1 at 2-4.)

A few days before the nunc pro tunc order was filed, Petitioner filed a pro se motion to vacate or set aside his sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp. Ex. A at 4-10.) This motion was amended by appointed counsel and raised two claims of ineffective assistance of trial counsel. (Id. at 46-55.) The first was that trial counsel was ineffective for misleading Petitioner into dismissing his direct criminal appeal on the "ill-founded assurance that [Petitioner] was serving only a ten year sentence due to a clerical error and would be eligible for parole in about four years . . . " and that this error would probably be corrected should Petitioner proceed with his appeal. (Id. at 48.)

Following an evidentiary hearing at which Petitioner and his trial counsel testified (Resp. Ex. B), the court found, in relevant part, that:

> The court finds that [Petitioner's] trial and appellate counsel[2] filed the notice of appeal as requested by [Petitioner]. [Petitioner] discussed the fact that the Missouri Department of Corrections erroneously had been informed that [Petitioner's] sentences were to run concurrently rather than consecutively as announced by the trial court. (That error was not rectified until nearly two months following the dismissal of the appeal.) They also discussed the potential that the error might never be discovered and that proceeding with the appeal would bring the error to light. They also discussed the potential for success in proceeding with the appeal. In light of all the information available to him, after full and complete discussion with appellate counsel, [Petitioner] elected to withdraw his appeal. The court finds no credible evidence that [Petitioner's] decision to withdraw his appeal was coerced by appellate counsel or was premised upon any false, misleading or erroneous advice by appellate counsel. There is no evidence that in providing legal counsel to [Petitioner], [Petitioner's] appellate counsel failed to exercise the care and skill of a reasonably competent attorney performing services under the same or similar

---

[2]Trial counsel and appellate counsel were the same attorney.

circumstances. Further, there is no evidence before this court from which it can find that [Petitioner] was prejudiced by the dismissal of his appeal.

(Id. at 64-65.)

Petitioner appealed on the one ground that his appellate counsel had misled him into withdrawing his appeal. (Id. at 73; Resp. Ex. at 8.) The appellate court analyzed his argument under the standard set forth by the Missouri Supreme Court in Ringo v. State, 120 S.W.3d 743, 745 (Mo. 2003 (en banc), which employed the two-part test of Strickland v. Washington, 466 U.S. 668, 694 (1984), and denied relief, finding as follows.

> Upon arrival at the MDOC [Missouri Department of Corrections], [Petitioner] learned of the sentencing error in the clerically-prepared typed judgment and thought he would have to serve only a ten-year sentence. [Petitioner] also thought he would be eligible for parole after serving forty percent, or four years, of the erroneously recorded ten-year sentence. [Petitioner] told his trial counsel (Counsel) of the sentencing error, and Counsel met with [Petitioner] to discuss the error and the status of [Petitioner's] direct appeal. Counsel told [Petitioner] the error could be discovered if [Petitioner] pursued his direct appeal. Counsel also told [Petitioner] that Counsel had consulted with other attorneys and had researched the issues [Petitioner] planned to include in the direct appeal. Counsel explained that, although he initially believed the direct appeal had merit, the results of his research led Counsel to believe the direct appeal had no merit after all. Counsel also explained the likely consequences of pursuing or withdrawing the direct appeal, including the fact that Counsel would be required to list the correct sentence on the notice of appeal. Consequently, [Petitioner] voluntarily withdrew his direct appeal . . . .
> On March 3, 2003, . . . [Petitioner] timely filed his pro se motion . . . . Although [Petitioner] alleged Counsel had provided ineffective assistance by misleading [Petitioner] into withdrawing his direct appeal, he failed to allege specifically the issues or grounds on which the direct appeal would have been based or that such an appeal would have been successful. The motion court thereafter appointed counsel, and [Petitioner] timely filed his amended motion. The amended motion also failed to allege the issues or grounds on which the direct appeal would have been based or that it would have been successful.

On September 12, 2003, the motion court held an evidentiary hearing on [Petitioner's] motion. Both [Petitioner] and Counsel testified. . . .

. . . .

Here, [Petitioner's] claim is without merit. The record reveals that Counsel did not misled or coerce [Petitioner] into withdrawing his direct appeal based on assurances that [Petitioner] definitely would be paroled in four years based on the erroneous clerically-prepared typed judgment. At the motion hearing, both [Petitioner] and Counsel testified that [Petitioner] withdrew his direct appeal after Counsel and [Petitioner] discussed the invalidity of the issues [Petitioner] had planned to address in the direct appeal and the likelihood that the mistake in [Petitioner's] sentence would be discovered by pursuing the direct appeal. The record also indicates Counsel informed [Petitioner] that Counsel had researched the issues they planned to include in the direct appeal, determined those issues were without merit, and believed [Petitioner] did not have a "winning case." Counsel told [Petitioner] of the possible consequences of going forward with the appeal, including the fact that the mistake in the clerically-prepared typed judgment would be discovered. On direct examination, Counsel testified as follows:

> [Counsel]: . . . I certainly couldn't lie [in drafting the appeal] and say that he only got ten and five concurrent as opposed to ten and five consecutive. So that was explained. I told him, I said, I don't think we can prevail and if we let sleeping dogs lie, I think you'll be paroled in four years or at least be eligible. If we pursue this, I have to put in that it's consecutive, it will probably be discovered and your parole date will get pushed back, it will be substantially pushed back.
>
> . . . .
>
> [Movant's PCR Counsel]: So in summary, you told him basically that as far as you could tell, he would be paroled in four years due to this clerical error, correct?
>
> [Counsel]: I said there was a chance. . . . We talked about it. I said there's a chance right now as it stands. You know, he told me [the MDOC] gave him something listing his parole date. He showed it to me. I said, if that is your parole date, I would just be happy, you know, that we got involuntary and that you got ten years. I wouldn't pursue this anymore.

- 5 -

>[Movant's PCR Counsel]: You told him that if you were to file an appeal, you would have to put the correct sentence in the appeal and it was your opinion that that would then clue in the Department of Corrects [sic] and/or the . . . [t]he Attorney General, who would then correct the clerical error causing him to serve the fifteen?
>
>[Counsel]: Causing him to serve a greater sentence, yes.
>
>[Movant's PCR Counsel]: Based on this, he decides not to file an appeal?
>
>[Counsel]: Correct.

Later, on cross-examination by the State, Counsel testified:

>[State]: After [Movant] brought [the sentencing error] to your attention . . . you told him basically based on upon [sic] his out date of four years that it looked like he had been sentenced to the ten and five concurrent . . . [d]id you ever make any assurances to him that that would remain his out date?
>
>[Counsel]: No. We didn't know. We were hoping.
>
>. . . .
>
>[State]: Okay. Did you ever tell him – you gave him advice on the basis of the appeal, your opinion of your chance of success?
>
>[Counsel]: I did. I told him that I believed we would not prevail on appeal. That was my legal opinion.
>
>[State]: What his reaction to that?
>
>[Counsel]: Well, he was hesitant . . . . we talked about it for a while, and I explained it to him, and he said, well, I trust you. . . . And . . . I said, look, I don't honestly believe [the appeal] will [succeed]. . . . He said he agreed with me.
>
>[State]: Okay. So it was his decision to dismiss the appeal?

> [Counsel]: The final decision was his, yes.
>
> [State]: Okay. Did you ever refuse to go forward with the appeal?
>
> [Counsel]: No.
>
> Clearly, the record reveals Counsel candidly testified about what had transpired and candidly advised [Petitioner] that Counsel believed the appeal had no value. Counsel also told [Petitioner] that it was likely the sentencing error would be discovered if [Petitioner] pursued the direct appeal. The record indicates Counsel was forthright in his advice to [Petitioner] and did not coerce, mislead, threaten, or cajole [Petitioner] into withdrawing the appeal. The record is devoid of any evidence indicating that [Petitioner] expressed a desire to pursue the direct appeal at that point or that Counsel refused to do so in spite of such a desire. In fact, [Petitioner's] own testimony indicates that Counsel did not attempt to convince [Petitioner] either to pursue or to withdraw the direct appeal but left the decision to [Petitioner] after they discussed the merits of the direct appeal.
>
> > [Movant's PCR Counsel]: Why did you waive your appeal?
> >
> > [Movant]: Because *I figured* – you know, he told me I didn't have a winning case . . . I mean, *if I waived my appeal, they would never find out about my fifteen years*, I would be home in the following year.
>
> (Emphasis added). Although [Petitioner] testified that both Counsel and his parole officer had told [Petitioner] he would have to serve only forty percent of the erroneously-recorded sentence, [Petitioner] presented no evidence demonstrating Counsel assured or promised [Petitioner] he would serve only four years if [Petitioner] withdrew the direct appeal. Moreover, the motion court apparently disregarded [Petitioner's] testimony on this point as not credible, as it was entitled to do.

(Id. at 2-3, 6-8.) (Alterations in quoted testimony in original.)

Petitioner now seeks federal habeas relief on the ground presented to, and rejected by, the Missouri Court of Appeals.

- 7 -

**Discussion**

Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)). See also **Weaver v. Bowersox**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]"). If, as in the instant case, the state court correctly employs the Strickland standard for analyzing an ineffective assistance of counsel claim, the "unreasonable application" clause of § 2254(d) governs. **Honeycutt v. Roper**, 426 F.3d 957, 960 (8th Cir. 2005).

"[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." **Williams v. Taylor**, 529 U.S. 362, 409 (2000). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." **Id.** When making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal

law is different from an *incorrect* application of federal law." **Id.** at 410.  "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous."  **Lockyer v. Andrade**, 538 U.S. 63, 75 (2003) (internal quotations omitted).  And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'"  **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999)).

Ineffective Assistance of Appellate Counsel.  It is well established that the Fourteenth Amendment guarantees a state criminal defendant the right to effective assistance of counsel on direct appeal.  See **Penson v. Ohio**, 488 U.S. 75, 79 (1988); **Douglas v. California,** 372 U.S. 353, 358 (1963); **Reagan v. Norris**, 279 F.3d 651, 656 (8th Cir. 2002).  To succeed on a claim of ineffectiveness of counsel on direct appeal, however, Petitioner must show, first, that appellate counsel's performance was below the reasonable standard of competence and, second, a reasonable probability that the result of the direct appeal would have been different absent this deficient performance.  See **Strickland v. Washington,** 466 U.S. 668, 687 (1984); **Pfau v. Ault**, 409 F.3d 933, 939 (8th Cir. 2005); **Armstrong v. Gammon**, 195 F.3d 441, 444 (8th Cir. 1999).

At issue in the instant case is Petitioner's claim that appellate counsel misled or coerced him into withdrawing his direct appeal.  This claim was rejected by the state courts based on (a) the motion court's credibility determinations and (b) the appellate

court's findings that counsel had forthrightly informed Petitioner that an appeal would lack merit and might result in the sentencing error being discovered. This determination and these findings are presumed to be correct. See **Robinson v. LaFleur**, 225 F.3d 950, 953 (8th Cir. 2000). "[Petitioner] has the burden of rebutting this presumption by clear and convincing evidence." **Id.** Petitioner argues that his counsel's advice to withdraw his appeal was an unethical concealment of the sentencing error and counsel's opinion that an appeal would be meritless was an attempt to conceal the concealment. This conclusory argument fails to rebut the presumption of correctness accorded the state courts' findings. Indeed, the record supports the findings that Petitioner and appellate counsel hoped the sentencing error would not come to light if the appeal was withdrawn. That their hope turned out to be futile does not render counsel's advice misleading or coercive. See **Nave v. Delo**, 62 F.3d 1024, 1036 (8th Cir. 1995) (noting that a reasoned decision will not support a claim of ineffective assistance of counsel "even when proved improvident") (internal quotations omitted).

Additionally, Petitioner has failed to show that counsel's advice that an appeal would be meritless was itself without merit. See **Thai v. Mapes**, 412 F.3d 970, 979 (8th Cir. 2005) (trial counsel's effectiveness cannot be challenged on basis of failure to make meritless argument); **Carter v. Hopkins**, 92 F.3d 666, 671 (8th Cir. 1996) (holding to same effect). As noted by the state appellate court, Petitioner has not identified any issue that counsel should have raised on appeal, but simply concludes that an appeal should have been perfected. "Claims argued with no specificity are waived." **Malone v.**

**Vasquez**, 138 F.3d 711, 720 (8th Cir. 1998). Thus, the failure to cite specific claims that should have been raised by appellate counsel fails to allege the necessary prejudice to establish ineffective assistance by that counsel. **Id.**

### Conclusion

Petitioner followed his counsel's advice to withdraw his direct criminal appeal. He has failed to establish that the state courts' findings that the advice was not ineffective assistance is contrary to clearly established Federal Law, is an unreasonable application of such law, or is an unreasonable determination of the facts. Consequently, his § 2254 claim is unavailing. Accordingly,

**IT IS HEREBY ORDERED** that Jeremiah W. ("Jay") Nixon, the Attorney General for the State of Missouri, is added as a party respondent.

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of James Hillerbrandt be **DENIED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of July, 2008.